# EXHIBIT
# B

Exhibit B to Declaration of Matt Tamel In Support of Defs' Motion To Dismiss


LexisNexis®

LEXSEE 89 F.SUPP.2D 543

CORA CALLOWAY, Plaintiff, v. BORO OF GLASSBORO DEPARTMENT OF POLICE, DET. ROBERT BEST, DET. RONALD MASSARI, JOHN DOE, and MELANIE POWELL, Defendants, and BORO OF GLASSBORO DEPARTMENT OF POLICE, DET. RONALD MASSARI, and MELANIE POWELL, Third-Party Plaintiffs, v. DET. ROBERT BEST, GLOUCESTER COUNTY PROSECUTORS OFFICE, ANDY YURICK, ESQ., JOHN DOES 1-5, and GLOUCESTER COUNTY, Third-Party Defendants.

CIVIL ACTION NO. 98-3139

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*89 F. Supp. 2d 543; 2000 U.S. Dist. LEXIS 1141; 10 Am. Disabilities Cas. (BNA) 302*

**February 8, 2000, Decided**

**DISPOSITION:** [**1] Motion of Defendants Police Department, Massari and Powell for summary judgment GRANTED in part and DENIED in part. Motion of Defendant Best and Third-Party Defendant Best, Andy Yurick, Esq. and the Prosecutor's Office GRANTED in part and DENIED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff alleged the conduct of defendant police department and prosecutor's office violated her rights under Americans with Disabilities, *42 U.S.C.S. § 12131 et seq.*, *§ 504* of the Rehabilitation Act, *29 U.S.C.S. § 794*, and *42 U.S.C.S. § 1983*; third party plaintiffs filed action alleging negligence and vicarious liability.

**OVERVIEW:** Plaintiff was deaf and functionally illiterate. During the course of a criminal investigation, plaintiff was questioned at the police station. No certified sign language interpreters were available. The defendants used an officer that understood sign language but was not certified to serve as plaintiff's interpreter. Plaintiff sued defendant police department, detectives, and prosecutor's office alleging violations of Americans with Disabilities Act (ADA), *42 U.S.C.S. § 12131 et seq.*, and *§ 504* of the Rehabilitation Act (Rehabilitation Act), *29 U.S.C.S. §*

*794.* Plaintiff alleged discrimination based on her disability after she was questioned without the assistance of a qualified interpreter. Plaintiff sought to hold individual defendants liable under ADA and Rehabilitation Act. The court determined that the ADA and Rehabilitation Acts prohibited discrimination against the deaf in the context of a station-house investigative interview and that the ADA and Rehabilitation Acts did not allow for the imposition of individual liability.

**OUTCOME:** Motions for summary judgment granted in part and denied in part; Americans with Disabilities Act and Rehabilitation Act (Acts) prohibited discrimination against the deaf in the context of a station-house investigative interview and the Acts did not allow for the imposition of individual liability.

**LexisNexis(R) Headnotes**

*Civil Rights Law > General Overview*
[HN1] See *42 U.S.C.S. § 1983.*

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional Sources*

Page 2

89 F. Supp. 2d 543, *; 2000 U.S. Dist. LEXIS 1141, **1;
10 Am. Disabilities Cas. (BNA) 302

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN2] See *28 U.S.C.S. § 1331.*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN3] See *28 U.S.C.S. § 1343.*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
[HN4] See *28 U.S.C.S. § 1367(a).*

*Civil Procedure > Removal > Proceedings > General Overview*
[HN5] See *28 U.S.C.S. § 1446.*

*Civil Procedure > Removal > Postremoval Remands > General Overview*
[HN6] See *28 U.S.C.S. § 1447.*

*Civil Procedure > Removal > Postremoval Remands > General Overview*
[HN7] It is well-established that an untimely filed removal notice and a violation of the unanimity rule are both non-jurisdictional defects and are waived if not objected to within the 30-day window afforded by *28 U.S.C.S. § 1447(c).*

*Civil Procedure > Removal > Postremoval Remands > Jurisdictional Defects*
*Civil Procedure > Removal > Postremoval Remands > Procedural Defects*
[HN8] After the expiration of the 30-day period following the filing of the notice of removal, the right to object to non-jurisdictional defects in removal procedures is considered waived and the court may not sua sponte remand. *28 U.S.C.S. § 1447(c).*

*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN9] On a motion for summary judgment, the court must determine whether the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN10] In opposing summary judgment, a party must do more than simply show that there is some metaphysical doubt as to material facts, but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence. The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party. Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment.

*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
[HN11] If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the court will accept as true all material facts set forth by the moving party with appropriate record support. Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless appropriate. *Fed. R. Civ. P. 56(e). Rule 56(e)* requires that the case be evaluated on its merits, with summary judgment being granted for the movants only if they are entitled to a judgment as a matter of law.

Page 3

89 F. Supp. 2d 543, *; 2000 U.S. Dist. LEXIS 1141, **1;
10 Am. Disabilities Cas. (BNA) 302

*Civil Rights Law > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
*Labor & Employment Law > Discrimination > Disability Discrimination > Rehabilitation Act*
[HN12] See *29 U.S.C.S. § 794.*

*Civil Rights Law > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN13] The broad reach of *29 U.S.C.S. § 794* is evidenced by the definition of program or activity, which includes all of the operations of a department, agency, special purpose district, or other instrumentality of a state or of a local government any part of which is extended federal financial assistance. *29 U.S.C.S. § 794(b)(1)(A).*

*Civil Rights Law > Protection of Disabled Persons > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Rehabilitation Act*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > Rehabilitation Act*
[HN14] To state a claim under *§ 504* of the Rehabilitation Act, *29 U.S.C.S. § 794*, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability. *29 U.S.C.S. § 794(a).*

*Civil Rights Law > General Overview*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > General Overview*
[HN15] See *42 U.S.C.S. § 12132.*

*Civil Rights Law > Protection of Disabled Persons > General Overview*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > Americans With Disabilities Act*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection >*

*Discrimination > Rehabilitation Act*
[HN16] Like *§ 504* of the Rehabilitation Act, *29 U.S.C.S. § 794*, the Americans with Disabilities Act's (ADA), *42 U.S.C.S. § 12131 et seq.*, coverage extends to all services, programs, and activities provided or made available by public entities, and is intended to apply to anything a public entity does. To state a claim under the ADA, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *42 U.S.C.S. § 12132.*

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > Americans With Disabilities Act*
[HN17] The regulations of the Rehabilitation Act provide that recipients of federal financial assistance shall insure that communications with their applicants, employees, and beneficiaries are effectively conveyed to those having impaired vision and hearing. *28 C.F.R. § 42.503(e) (1999).* More specifically, the regulations implementing Title II of the Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, require public entities to take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others. *28 C.F.R. § 35.160.* Accordingly, public entities must furnish appropriate auxiliary aids and services, which include qualified interpreters, telecommunications devices for deaf persons, or other effective methods of making aurally delivered materials available to individuals with hearing impairments. *28 C.F.R. §§ 35.104, 35.160(b).*

*Civil Rights Law > General Overview*
[HN18] The definition of "qualified interpreter" means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary. *28 C.F.R. § 35.104.*

Page 4

89 F. Supp. 2d 543, *; 2000 U.S. Dist. LEXIS 1141, **1;
10 Am. Disabilities Cas. (BNA) 302

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Qualified Individuals With a Disability*
[HN19] See *42 U.S.C.S. § 12131.*

*Labor & Employment Law > Discrimination > Disability Discrimination > Public Accommodations*
[HN20] See *42 U.S.C.S. § 12131(1).*

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*
[HN21] Custodial interrogation is the questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*
[HN22] In determining whether an individual is in custody, the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*
[HN23] The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police other than those normally attendant to arrest and custody that the police should know are reasonably likely to elicit an incriminating response.

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*
[HN24] It is well-established that there generally is no custody if a person arrives at the police station on his own volition.

*Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation*
[HN25] Police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply

because the questioning takes place in the station house.

*Civil Rights Law > General Overview*
*Family Law > Family Protection & Welfare > Dependent & Disabled Adults > Services*
*Public Health & Welfare Law > Social Services > General Overview*
[HN26] Provisions of the Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, and the Rehabilitation Act prohibiting exclusion of disabled persons from government programs are applicable to state and local correctional facilities.

*Civil Rights Law > General Overview*
*Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > Rehabilitation*
*Public Health & Welfare Law > Social Services > General Overview*
[HN27] The statutory definition of program or activity in *§ 504* of the Rehabilitation Act, *29 U.S.C.S. § 794*, includes all of the operations of a department of a local government. *29 U.S.C.S. § 794(b)(1)(A).* The ordinary and natural meaning of activity is a natural or normal function or operation, or an organizational unit for performing a specific function.

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > General Overview*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > Americans With Disabilities Act*
[HN28] The Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, and the Rehabilitation Act must be interpreted broadly to include the ordinary operations of a public entity in order to carry out the purposes of prohibiting discrimination.

*Civil Rights Law > General Overview*
[HN29] Individual defendants cannot be held liable for violations of Title II of the Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, and *§ 504* of the Rehabilitation Act, *29 U.S.C.S. § 794.*

*Civil Rights Law > Protection of Disabled Persons > General Overview*
*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions >*

Page 5

89 F. Supp. 2d 543, *; 2000 U.S. Dist. LEXIS 1141, **1;
10 Am. Disabilities Cas. (BNA) 302

*General Overview*
*Public Health & Welfare Law > Social Services > Disabled & Elderly Persons > Advocacy & Protection > Discrimination > Americans With Disabilities Act*
[HN30] Title II of the Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, provides disabled individuals redress for discrimination by a public entity. That term, as it is defined within the statute, does not include individuals.

*Civil Rights Law > General Overview*
[HN31] Individual liability is not contemplated under Title II of the Americans with Disabilities Act, *42 U.S.C.S. § 12131 et seq.*, and *§ 504* of the Rehabilitation Act, *29 U.S.C.S. 794.*

*Torts > Public Entity Liability > Immunity > General Overview*
[HN32] It is well-established that under the doctrine of qualified immunity: government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession. Thus, law enforcement officials who reasonably but mistakenly conclude that their conduct is lawful are entitled to immunity.

*Civil Rights Law > General Overview*
[HN33] To assert a claim successfully under *42 U.S.C.S. § 1983*, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law.

*Civil Rights Law > Immunity From Liability > Respondeat Superior Distinguished*
*Civil Rights Law > Section 1983 Actions > Government Actions*
*Governments > Local Governments > Claims By & Against*
[HN34] It is well established that there is no general municipal respondeat superior liability under *42 U.S.C.S.*

*§ 1983*; rather, a municipality may be liable only when the alleged deprivation resulted from a policy, practice, or custom of the governmental entity.

*Civil Rights Law > General Overview*
*Governments > Local Governments > Duties & Powers*
[HN35] Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

*Criminal Law & Procedure > Arrests > General Overview*
*Criminal Law & Procedure > Interrogation > Miranda Rights > General Overview*
[HN36] See *N.J. Stat. Ann. § 34:1-69:10(c)(1)-(2).*

*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*
[HN37] It is clear that the purpose of *N.J. Stat. Ann. § 34:1-69:10* is to ensure that incriminating statements made without the appropriate assistance be suppressed.

*Criminal Law & Procedure > Search & Seizure > Search Warrants > Probable Cause > Particularity*
*Criminal Law & Procedure > Search & Seizure > Search Warrants > Probable Cause > Personal Knowledge*
*Torts > Intentional Torts > False Imprisonment > Defenses > Justification*
[HN38] Probable cause, an absolute defense to a claim of false imprisonment, exists if at the time of arrest the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.

**COUNSEL:** James M. Shepard-Kegl, Esq., North Yarmouth, ME, for Cora Calloway, Plaintiff.

Allan E. Richardson, Esq., Law Offices of Allan E. Richardson, Woodbury, NJ, for Borough of Glassboro Department of Police, Ronald Massari, and Melaney Powell, Defendants and Third-Party Plaintiffs.

Page 6

89 F. Supp. 2d 543, *; 2000 U.S. Dist. LEXIS 1141, **1;
10 Am. Disabilities Cas. (BNA) 302

Robert M. Kaplan, Esq., Margolis Edelstein, Westmont, NJ, for Robert Best, Andy Yurick, Esq., Gloucester County Prosecutor's Office, and Gloucester County, Robert Best Defendant and Third-Party Defendants.

**JUDGES:** STEPHEN M. ORLOFSKY, United States District Judge.

**OPINION BY:** STEPHEN M. ORLOFSKY

**OPINION**

[*545] **ORLOFSKY**, District Judge:

This case presents two issues of first impression in this Circuit, namely, (1) whether a deaf arrestee may bring a claim under Title II of the Americans with Disabilities [*546] Act, *42 U.S.C. § 12131, et seq.* ("Disability Act"), [1] and *§ 504* of the Rehabilitation Act of 1973, *29 U.S.C. § 794* [**2] *(a)*("Rehabilitation Act"), 2 for discrimination based on her disability after she was questioned at a police station, during the course of a criminal investigation, allegedly without the assistance of a qualified interpreter; and (2) whether individual defendants can be held liable under the Disability and Rehabilitation Acts. For the reasons set forth below, I find that the Disability and Rehabilitation Acts prohibit discrimination against the deaf in the context of a station-house investigative interview and that the Acts do not allow for the imposition of individual liability.

> 1 The Americans with Disabilities Act provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *42 U.S.C. § 12132 (1995).*
>
> 2 The Rehabilitation Act of 1973 provides, in relevant part:
>
>> No otherwise qualified individual with a disability in the United States, as defined in section 706(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

*29 U.S.C. § 794(a) (1999).*

[**3] Plaintiff, Cora Calloway ("Calloway"), a deaf and functionally illiterate woman, brought this action alleging that the conduct of the Borough of Glassboro Department of Police ("Police Department"), Glassboro Police Detective Ronald Massari ("Massari"), Gloucester County Prosecutor's Office Sergeant Robert Best ("Best"), and Melaney Powell ("Powell") violated her rights under the Disability and Rehabilitation Acts. In her Complaint, Calloway also asserts a separate claim under *42 U.S.C. § 1983* 3 based solely upon the Disability and Rehabilitation Acts, as well as pendent state statutory and common law tort claims. The Police Department, Massari and Powell ("Third-Party Plaintiffs") in turn filed a third-party complaint, alleging negligence and vicarious liability, against Best, [4] Prosecutor Andy Yurick, Esq., the Gloucester County Prosecutor's Office and Gloucester County. [5] Before this Court are two separate motions for summary judgment, made pursuant to *Federal Rule of Civil Procedure 56(c)*. This Court exercises jurisdiction pursuant to *28 U.S.C. §§ 1331*, [6] *1343*, [7] [*547] and *1367*. [8]

> 3 [HN1] *Section 1983* provides that:
>
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*42 U.S.C.A. § 1983 (West Supp. 1999).*

[**4]

> 4 Best is named both as a Defendant and a Third-Party Defendant.
> 5 It should be noted that while the Third-Party Plaintiffs failed to list Gloucester County in the caption of the Third-Party Complaint, they do allege in Count V that "Gloucester County is vicariously liable for the acts and omissions of its

Page 7

89 F. Supp. 2d 543, *547; 2000 U.S. Dist. LEXIS 1141, **4;
10 Am. Disabilities Cas. (BNA) 302

employees." See Third-Party Complaint at PP 27-29 (filed July 2, 1998). Although there is no record documentation to support a finding of effective service upon Gloucester County, the County entered its appearance by way of an Answer to the Third-Party Complaint. See Third-Party Answer (filed Aug. 27, 1998). Since the County failed to assert insufficiency of service of process as a defense, I find that defense waived. Accordingly, Gloucester County is a proper party in this case. See *Fed. R. Civ. P. 12 (h)(1)*.

For purposes of these motions, however, it is clear from the Notice of Motion that Gloucester County has not moved for summary judgment pursuant to *Federal Rule of Civil Procedure 56(c)*. See Notice of Motion (filed May 14, 1999).

6 [HN2] *Section 1331* provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331 (1994)*.

7 [HN3] *28 U.S.C. § 1343 (1994)* provides, in pertinent part:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

Id. at *§ 1343(3)*.

8 [HN4] *Section 1367* provides, in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .

*28 U.S.C. § 1367(a) (1994)*.

## [**6] I. BACKGROUND

On the afternoon of April 23, 1997, Plaintiff Cora Calloway, a deaf and functionally illiterate woman, was allegedly assaulted by a neighbor, Lori Seeler ("Seeler"), at the Hollybush Apartments in Glassboro, New Jersey. See Pl.'s Br. in Opp. to Mot. for Summ. J. by Det. Best and Third Party Def.'s ("Pl.'s Br. 1") at 1. Seeler told the responding police officer that Calloway, who had left the scene, had touched her six-year-old daughter in the chest and pelvic areas. See id.; see also Best and Third-Party Def.'s ("Third-Party Def.'s") Ex. C (Gallagher Police Report) at 1. Seeler was then instructed to report to the police station for further investigation of her complaint. See Third-Party Def.'s Ex. C at 1.

At the police station, Seeler told Defendant Massari and another investigator not a party to this suit that she assaulted Calloway after her daughter disclosed that Calloway had "touched her on her breasts, buttocks and vaginal area." See Third-Party Def.'s Ex. D (Massari Report) at 1. Massari and the other investigator then interviewed the alleged victim who confirmed Seeler's allegations that Calloway had improperly touched the girl while [**7] babysitting her sometime that year. See id. at 2; see also Third-Party Def.'s Ex. E (Victim's Taped Interview). Subsequently, Seeler filed criminal complaints against Calloway for criminal sexual contact and child endangerment pursuant to *N.J.S.A. 2C:14-3(a)* and *2C:24-4(a)*, respectively. See Third-Party Def.'s Ex. F.

At some point in the afternoon, the Plaintiff, Cora Calloway, also arrived at the police station, accompanied by her two hearing siblings, allegedly in order to file a complaint for assault against Seeler. See Third-Party Def.'s Br. at 2; see also Pl.'s Ex. G (Kim Calloway Dep.) at 21. Instead of filing the complaint, however, at some point after their arrival at the station the police informed

Page 8

89 F. Supp. 2d 543, *547; 2000 U.S. Dist. LEXIS 1141, **7;
10 Am. Disabilities Cas. (BNA) 302

the trio that Seeler had reported that "Cora had touched her daughter in places she shouldn't be touched." Pl.'s Ex. G (Kim Calloway Dep.) at 21. The Plaintiff's sister, Kim Calloway, testified that, using her rudimentary American Sign Language [9] skills, she signed the substance of Seeler's allegations to the Plaintiff who then became upset and started to cry. See id. Although Kim Calloway asserted that the Plaintiff understood the allegations against her, [**8] she believed that the Plaintiff was unaware that Seeler had formalized the charges in a criminal complaint. See id. at 29.

> 9    An expert report submitted by Calloway provides that she is capable of communicating in ASL or American Sign Language. See Pl.'s Ex. H ("Language Evaluation" by Robert J. Hoffmeister, Ph.D.) at 1. ASL, a complex visual-spatial language, is the native language of many Deaf men and women in the United States and English-speaking parts of Canada. See Karen Nakamura, About American Sign Language, (Oct. 28, 1998) <http://www.deaflibrary.org/asl.html>.

Aware that Calloway was present at the station, the police began to try to locate a sign language interpreter to aid in the investigation. According to police reports, after several failed attempts to obtain an [*548] interpreter, police personnel contacted Sergeant Eric Johnson [10] of the Gloucester County Prosecutor's Office for assistance. See Third-Party Def.'s Ex. D at 2; Massari Aff. at PP 9-11. According to the affidavits filed in this case, Johnson then instructed Best, also of the Gloucester County [**9] Prosecutor's Office, to report to the police station to assist in the sexual assault investigation. See Third-Party Def.'s Ex. K (Best Certification) at P 2. Additionally, Johnson contacted an acquaintance, Defendant Melaney Powell, an uncertified interpreter, and asked Powell to interpret for Calloway since "none of the interpreters known to the department or the prosecutor's office was [sic] available." Powell Aff. at PP 5-8. According to Powell's Affidavit, she told Johnson that she was not a certified interpreter. See id. at P 9.

> 10    In his report and affidavit, Massari interchangeably refers to "Sgt. E. Johnson" and "Eric Johnston." See Third-Party Def.'s Ex. D at 2; Massari Affidavit at P 12. I will assume, for purposes of this motion, that Mssrs. Johnson and Johnston are the same individual and will hereinafter refer only to Sergeant Eric Johnson.

After Powell and Best arrived at the police station, they, along with Massari, escorted Calloway from the lobby of the police station, where she [**10] was sitting with her siblings, to the detective bureau for questioning concerning the alleged sexual assault of Seeler's daughter. See Third-Party Def.'s Ex. G at 2. During this videotaped interview, the officers repeatedly attempted, through Powell's interpretive services, to deliver the Miranda warnings to Calloway. See Def.'s Br. at 4; Pl.'s Br. 1 at 3. When Calloway indicated that she did not understand the word "lawyer," the officers suspended the interview. See Third-Party Def.'s Ex. K (Best Certif.) at P 5; Powell Aff. at P 16; see also Massari Aff. at P 15. Subsequently, an attorney notified the officers that he represented Calloway in a civil matter and, after Powell interpreted a phone call from the attorney to Calloway, Calloway indicated that she no longer wished to speak to the police without her attorney present. See Pl.'s Br. 1 at 5; Powell Aff. at PP 20-21. Calloway was arrested, bail was set, and she was released the next day on her own recognizance. See Pl.'s Br. 1 at 5. [11]

> 11    According to Calloway, she subsequently filed a criminal complaint against Lori Seeler, to which Seeler pled guilty in the Glassboro Municipal Court. See Pl.'s Br. at 6. Moreover, the criminal complaints against Calloway were dismissed. See id.

[**11]  Calloway contends that throughout the "interrogation" she was distraught by her inability to understand Powell, whom she argues was unqualified to serve as her interpreter, and by Powell's incorrect interpretation of her signing communications to the police. See Pl.'s Br. 1 at 4. Calloway filed a Complaint against the Police Department, Best, Massari and Powell in the New Jersey Superior Court, Law Division alleging violations of the Americans with Disabilities Act, *42 U.S.C. § 12131 et seq.* (Count II) and the Rehabilitation Act of 1973, *29 U.S.C. § 794* (Count III). Calloway also brought a claim pursuant to *42 U.S.C. § 1983* for alleged violations of the Disability and Rehabilitation Acts (Count IV), a claim for "mental and physical anguish" (Count V) and state law claims for lack of a qualified interpreter, in violation of *N.J.S.A. 34:1-69.10(c)* (Count I), false imprisonment (Count VI), and negligence against Powell (Count VII). [12] See Complaint (removed to the United States District Court for the District of New Jersey, July 2, 1998). On May 29, 1998, the Honorable John Holston of the New Jersey

Page 9

89 F. Supp. 2d 543, *548; 2000 U.S. Dist. LEXIS 1141, **11;
10 Am. Disabilities Cas. (BNA) 302

Superior [**12] Court, Law Division, Gloucester County, dismissed Calloway's state law and mental anguish claims against Defendant Best. See Pl.'s Br. 1 at 6; Third-Party [*549] Def.'s Ex. I. Subsequently, the Police Department, Massari and Powell ("Third-Party Plaintiffs") filed a Third-Party Complaint against Gloucester County, the Gloucester Prosecutor's Office, Andrew Yurick, Esq. and Best, claiming that they justifiably relied on the negligent advice of Best that Powell was lawfully permitted to translate for the deaf. See Third-Party Complaint (filed July 2, 1998). On July 2, 1998, the matter was removed to this Court. See Notice of Removal (filed July 2, 1998). [13] On May 14, 1999, two motions for summary judgment were submitted to this Court: (1) by Best, in his capacity as both a defendant and third-party defendant, and third-party defendants Andy Yurick, Esq. and the Gloucester County Prosecutor's Office; [14] and (2) by the Third-Party Plaintiffs.

12 Calloway also seeks injunctive relief against the Police Department and Powell in Counts VIII and IX of her Complaint. Specifically, Powell seeks to compel the Police Department "to engage qualified and certified interpreters when dealing with Deaf people who rely on sign language" and to prohibit Powell "from working as a sign language interpreter for police departments within the State of New Jersey until she obtains the requisite certification from the National Registry of Interpreters for the Deaf." Complaint, Counts VIII and IX (filed July 2, 1998).

[**13]

13 While it is clear that the removal of this case was replete with nonjurisdictional defects, for the reasons set forth below, this Court will not remand this case to state court.

[HN5] Pursuant to *28 U.S.C. § 1446*:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been

filed in court and is not required to be served on the defendant, whichever period is shorter . . . .

Id. at *§ 1446(b)*. After such a notice of removal is filed, [HN6] the provisions of *28 U.S.C. § 1447* apply, which provide, in relevant part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under *section 1446(a)*. If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

Id. at *§ 1447(c)*.

In this case, although the record does not reflect when the defendants received or were served with the Complaint, it is logical to presume that such service was effectuated in mid-March, 1998. See Complaint (filed on or about March 12, 1998). Since the Notice of Removal was not filed until July 2, 1998, it is clear that such Notice was untimely pursuant to *28 U.S.C. § 1446(b)*. Moreover, the well-established "unanimity rule," requiring removal on behalf of all defendants, was violated since Defendant Best failed to join in the Notice of Removal. See *Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1994)*.

In this case, following the removal to federal court, Defendant Best filed an answer and cross-claimed as a third-party defendant. See Answer (filed Aug. 27, 1998). Subsequently, Best filed a motion for summary judgment and acknowledged the removal to this Court. See Third Party Def.'s Br. at 5-6. No party to this

Page 10

89 F. Supp. 2d 543, *549; 2000 U.S. Dist. LEXIS 1141, **13;
10 Am. Disabilities Cas. (BNA) 302

litigation has objected to the defects in the removal procedures followed in this case.

[HN7] It is well-established that an untimely filed removal notice and a violation of the unanimity rule are both nonjurisdictional defects and are waived if not objected to within the thirty-day window afforded by *28 U.S.C. § 1447(c)*. See id. ("failure of all defendants to join is a 'defect in removal procedure' within the meaning of *§ 1447(c)*, but is not deemed to be jurisdictional"); *Air-Shields, Inc. v. Fullam, 891 F.2d 63, 65 (3d Cir. 1989)*(referring to untimely removal and removal without required surety bond as procedural defects); see also Wright, Miller & Cooper, Federal Practice and Procedure: Juris. 3d § 3739 ("a defect in removal procedure within the meaning of *Section 1447(c)* refers to any defect that does not involve the inability of a federal district court to entertain the suit as a matter of its original subject matter jurisdiction, which, according to Section 1441(a), would make the action nonremovable").

Consequently, [HN8] after the expiration of the thirty-day period following the filing of the Notice of Removal, the right to object to nonjurisdictional defects in removal procedures is considered waived and the court may not sua sponte remand. See *28 U.S.C. § 1447(c)*; *Balazik, 44 F.3d at 214 n. 5* (citing *McGlinchey v. Hartford Accident and Indem. Co., 866 F.2d 651, 653 (3d Cir. 1989)); Air-Shields, Inc., 891 F.2d at 65* ("the district court could only remand within 30 days of the filing of notice to remove for procedural defects"); see also Wright, Miller and Cooper, at § 3739. Accordingly, I shall not remand for the glaringly apparent procedural defects in the removal process in this case. See *Michaels v. State of New Jersey, 955 F. Supp. 315, 322 (D.N.J. 1996)*(Barry, J.); see also *Orndorff v. Allstate Ins. Co., 896 F. Supp. 173, 174 n.1 (M.D.Pa. 1995).*

14 For the sake of clarity, this Court notes, for the final time, that third-party defendant Gloucester County has not moved for summary judgment.

[*550] **II. LEGAL STANDARD GOVERNING A**

**MOTION FOR SUMMARY JUDGMENT**

"On [HN9] a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)* (citing *Fed. R. Civ. P. 56(c)*). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." Id. (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*). "In [HN10] opposing summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*, [**15] but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence." *Abraham, 183 F.3d at 287*. "The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*; see also *Abraham, 183 F.3d at 287*. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham, 183 F.3d at 287* (citing *Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998)*). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." Id.

[HN11] If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)* [**16] (quoting *Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)*). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." *Fed. R. Civ. P. 56(e)*; see *Anchorage Assocs., 922 F.2d at 175*. *Rule 56(e) of the Federal Rules of Civil Procedure* requires that the case be evaluated on its merits, with summary judgment being granted for the movants only if they are entitled to a

Page 11

89 F. Supp. 2d 543, *550; 2000 U.S. Dist. LEXIS 1141, **16;
10 Am. Disabilities Cas. (BNA) 302

judgment as a matter of law. See *Anchorage Assocs., 922 F.2d at 175.*

## III. DISCUSSION

### A. Summary Judgment Motion of Third-Party Plaintiffs Glassboro Department of Police, Massari, Powell and Defendant Best

In her Complaint, Calloway alleges that on April 23, 1997, the Police Department, Massari, Best and Powell violated her rights when they appointed an allegedly unqualified interpreter to assist Calloway throughout an alleged custodial interrogation at the Glassboro Department of Police. See Complaint at §§ 9-16. In support of their motion for summary judgment, the Third-Party Plaintiffs and Best contend that Calloway has failed to make out cognizable claims under the Disability [**17] and Rehabilitation Acts, that all state law claims should be dismissed, and that the Third-Party Plaintiffs and Best are entitled to qualified immunity. Calloway argues in response that genuine issues of material fact exist on all claims and that the Third-Party Plaintiffs and Best are not entitled to qualified immunity. This Court shall first address the merits of the federal claims, then analyze the state law issues.

[*551] 1. *The Americans with Disabilities Act, The Rehabilitation Act, and Section 1983*

a. Liability of a Public Entity Under the Disability and Rehabilitation Acts

The first broad issue this Court must decide is whether Calloway has in fact presented cognizable claims under the Americans with Disabilities Act and Rehabilitation Act. Encompassed within the broad scope of this issue are sub-issues requiring this Court: (1) to define the police conduct at issue, or more specifically, to determine whether Calloway was subjected to a custodial interrogation or merely investigative questioning; and (2) to determine whether that police conduct is covered under the Americans with Disabilities Act and Rehabilitation Act. If these federal statutes are found applicable to [**18] this case, this Court must then decide whether Best, Massari and Powell are entitled to qualified immunity under the Acts as well as under *42 U.S.C. § 1983*. The starting point of this Court's analysis must begin with the text of the Disability and Rehabilitation Acts.

[HN12] *Section 504* of the Rehabilitation Act of 1973, the first broad federal statute aimed at eradicating discrimination against individuals with disabilities, reads in part:

> No otherwise qualified individual with a disability . . . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

*29 U.S.C. § 794*; see also *Helen L. v. DiDario, 46 F.3d 325, 330 (3d Cir. 1995)*. [HN13] The broad reach of this statutory provision is evidenced by the definition of "program or activity" which includes "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government. . . any part of which is extended Federal financial assistance. [**19] " *29 U.S.C. § 794(b)(1)(A)*; see also *Yeskey v. Commonwealth of Pennsylvania Dep't of Corrections, 118 F.3d 168, 170 (3d Cir.), aff'd, 524 U.S. 206, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998)*; *Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998)*. [HN14] To state a claim under *§ 504*, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability. See *29 U.S.C. § 794(a)*.

[HN15] Title II of the Disability Act prohibits discrimination in the services of public entities and provides:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*42 U.S.C. § 12132*. [HN16] Like *section 504* of the Rehabilitation Act, the Disability Act's coverage extends to "all services, programs, and activities [**20] provided or made available by public entities," and is intended to "apply to anything a public entity does." *Yeskey, 118 F.3d at 171* (quoting *28 C.F.R. § 35.102(a)* and pt. 35, app. A,

Page 12

89 F. Supp. 2d 543, *551; 2000 U.S. Dist. LEXIS 1141, **20;
10 Am. Disabilities Cas. (BNA) 302

subpt. A at 456 (1996 version)). Also congruous to *section 504*, to state a claim under the Disability Act, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. See *42 U.S.C. § 12132*. Importantly, the law developed under *section 504* of the Rehabilitation Act is applicable to Title II of the Disability Act. See *Yeskey, 118 F.3d at 170; Helen L., 46 F.3d at 330 n. 7* (citing *Easley v. Snider, 36 F.3d 297 (3d Cir. 1994)*).

The regulations promulgated to implement these federal statutes provide the underlying basis of Calloway's Complaint. [*552] [HN17] The regulations of the Rehabilitation Act provide that "recipients [**21] [of federal financial assistance] shall insure that communications with their applicants, employees and beneficiaries are effectively conveyed to those having impaired vision and hearing." *28 C.F.R. § 42.503(e) (1999)*. More specifically, the regulations implementing Title II of the Disability Act require "public entities to take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." Id. at *§ 35.160*. Accordingly, public entities must furnish "appropriate auxiliary aids and services" which include qualified interpreters, telecommunications devices for deaf persons (TDD's) or "other effective methods of making aurally delivered materials available to individuals with hearing impairments." Id. at *§§ 35.160(b), 35.104*; see also *42 U.S.C. § 12102(1)*. Most relevant to these motions is [HN18] the definition of "qualified interpreter" which means "an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary." *28 C.F.R. § 35.104*.

The parties dispute [**22] whether the facts of this case support a cause of action under the Disability and Rehabilitation Acts. To dispose of the obvious, all parties are in agreement that Calloway is a "qualified individual with a disability" [15] and that the Police Department is a public entity. [16] Although not a major area of contention, the Third-Party Plaintiffs and Best contend that the Police Department is not a public entity which receives federal financial assistance for purposes of the Rehabilitation

Act. Simply stated, I find that there exists a genuine issue of material fact regarding the Police Department's receipt of federal aid. See James M. Shepard-Kegl Certif. at PP 2, 5 (filed May 10, 1999)(stating that the Glassboro Police Department received four federal grants under the Public Safety Partnership and Community Policing Act of 1994); see also *28 C.F.R. § 42.540(f) (1999)*("'Federal financial assistance' means any grant . . . by which the Department provides or otherwise makes available assistance in the form of . . .funds").

15  [HN19] *42 U.S.C. § 12131* provides:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Id. at *§ 12131(2)*; see also *28 C.F.R. § 35.104*. [**23]

16  [HN20] *Section 12131* provides, in pertinent part:

> The term "public entity" means--
>
> > (A) any State or local government;
> >
> > (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . .
> >
> > . .

Page 13

89 F. Supp. 2d 543, *552; 2000 U.S. Dist. LEXIS 1141, **23;
10 Am. Disabilities Cas. (BNA) 302

*42 U.S.C. § 12131(1).*

Not so easily resolved is the question lying at the heart of the parties' disagreement: whether Calloway was denied the benefits of a program, service, or activity of the Glassboro Department of Police. Accordingly, I now turn my attention to that inquiry.

In her Complaint, Calloway alleges that she was subjected to a custodial interrogation without the assistance of a qualified interpreter in violation of the Disability and Rehabilitation Acts. See Complaint at PP 9-16. In support of their motion for summary judgment, the Third-Party Plaintiffs and Best dispute the occurrence of a custodial interrogation and, in the alternative, assert that such an interrogation is not a service, program, or activity of a public entity, thereby precluding the application of the Disability and Rehabilitation [**24] Acts. Accordingly, this Court must first determine whether the Police Department conducted a custodial interrogation of Calloway.

[*553] In the seminal case of *Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)*, the Supreme Court used the now familiar term "custodial interrogation" to describe the circumstance in which the warnings first elucidated in that case must be delivered. See *id. at 444.* In Miranda, the Court described [HN21] custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Since the Miranda decision, the Supreme Court has refined the definitions of custodial interrogation's dual requirements. Currently, in [HN22] determining whether an individual is in "custody," the ultimate inquiry is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983)*(quoting *Oregon v. Mathiason, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977))*; [**25] *United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999)*; see also *Berkemer v. McCarty, 468 U.S. 420, 441-442, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984)*(custody is defined as whether a reasonable person in the suspect's position would believe she was in police custody of the degree associated with formal arrest). Moreover, in interpreting "interrogation" the Court, in *Rhode Island v. Innis, 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980)* stated:

We conclude that [HN23] the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.

*Id. at 300-01.*

I need not decide whether there was an interrogation because I cannot find, on the spotty record before me, that Calloway was in custody during the questioning. [HN24] It is well-established [**26] that there generally is no custody if a person arrives at the police station on his own volition. See *Oregon v. Mathiason, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977).* Acknowledging that, under a certain set of circumstances, custody could arise after voluntarily appearing at the police station, see *Tankleff v. Senkowski, 135 F.3d 235 (2d Cir. 1998)*, I find that considering the facts of this case, a reasonable person in Calloway's position would not believe, at the time of the questioning, that she was in police custody to the degree associated with a formal arrest.

The events as described begin with the investigators and Powell escorting Calloway from the police station lobby to the detective bureau because "there was something [the officers] wanted to discuss with her." See Third-Party Def.'s Ex. G at 2. Then, a videotaped interview in the detective bureau commenced, lasting only approximately twenty minutes, during which the investigators attempted to establish a relationship between the suspect and the victim [17] and advise Calloway of the allegations against her. [18] In her brief, Calloway [*554] concedes that after the police attempted [**27] to inform Calloway of her Miranda rights, "the officers suspended the interview." Pl.'s Br. 1 at 3.

17 In his police report of the incident, Defendant Best stated that he "attempted to establish what the relationship was between the suspect and the victim." See Third-Party Def.'s Ex. G at 2. The

Page 14

89 F. Supp. 2d 543, *554; 2000 U.S. Dist. LEXIS 1141, **27;
10 Am. Disabilities Cas. (BNA) 302

occurrence of investigative questioning is confirmed in an expert report submitted by Calloway. See Pl.'s Ex. F ("Report on the Videotaped Portion of the April 23, 1997 Custodial Interrogation of Cora Ann Calloway by the Glassboro Police Department as Interpreted by Melanie [sic] Powell") at 2 (stating that, during the interview, a police officer asked Calloway, "were you ever actually her babysitter?").

18 The fact that the police advised Calloway of the allegations made against her is supported both by Defendant Best's police report, see Third-Party Def.'s Ex. G at 2, and Calloway's Expert Report, see Pl.'s Ex. F (providing that the police stated "[The victim], the little girl, has said that you have touched her private parts").

[**28] Considering the facts and Calloway's concession that the interview was suspended after the failed attempt to "Mirandize" Calloway, it is difficult for this Court to see how general, preliminary questioning pursuant to a routine police investigation would cause a reasonable person to believe that she was in custody. In *Mathiason, 429 U.S. at 495,* the Supreme Court cautioned that "custody" must not be read too broadly: "Police [HN25] officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house. . . ." Id. In this case, there simply is no evidence, before the attempt to give the Miranda warnings, that the investigators did or said anything, "either in their manner or approach or in the tone or extent of their questioning, which indicated that they would not have heeded a request to depart or to allow the suspect to do so." *Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir. 1974)*(quoting *United States v. Hall, 421 F.2d 540, 544-45 (2d Cir. 1969)).* Moreover, there is no evidence that the questioning was [**29] even accusatory, that there was any physical restraint on Calloway, or that there were an unusual number of officers present. See e.g., *Government of the Virgin Islands v. Christopher, 38 V.I. 193, 990 F. Supp. 391, 394 (D. V.I. 1997)*(quoting *United States v. Ventura, 85 F.3d 708, 711 (1st Cir. 1996)*("relevant circumstances include 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation'"). Accordingly, I find that Calloway

was not custodially interrogated.

The question then becomes whether mere investigative questioning at the police station is covered by the Disability and Rehabilitation Acts. More specifically, the inquiry is whether investigative questioning at the police station is a program, service, or activity of the Police Department. For the reasons set forth below, I find that such questioning is in fact an activity of a public entity thereby warranting Disability and Rehabilitation Acts coverage.

In *Yeskey v. Commonwealth of Pennsylvania Dep't of Corrections, 118 F.3d 168 (3d Cir. 1997),* [**30] the Third Circuit held that the [HN26] provisions of the Disability and Rehabilitation Acts prohibiting exclusion of disabled persons from government programs were applicable to state and local correctional facilities. See id. at 172. There, a state prison inmate, who was denied admission to a prison-sponsored boot camp program due to his history of hypertension, brought an action alleging, among other things, a violation of the Disability Act. See *Yeskey, 118 F.3d at 169.* In support of the finding that the petitioner had a valid cause of action, Judge Becker meticulously detailed the "all-encompassing" statutory and ordinary definitions of "program" and "activity" under the Disability and Rehabilitation Acts, the Department of Justice ("DOJ") regulations implementing both *Section 504* and Title II of the Disability Act, and the judicial authority supporting the Disability Act's application to state prison programs. See id. at 170-174. On appeal, the Supreme Court affirmed Judge Becker's holding, finding that "the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates [**31] breadth." See *Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 212, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998).* Importantly, the Supreme Court held that participation in such programs or activities need not be "voluntary" on the part of an applicant who seeks a benefit from the State. See id. at 211.

In *Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998),* the Eighth Circuit relied on Yeskey [*555] to find a cause of action under the Disability and Rehabilitation Acts in the context of an arrest. *Id. at 913.* [19] In that case, a wheelchair-bound arrestee brought an action against the local police under the Disability and Rehabilitation Acts for injuries he sustained while being transported in a

Page 15

89 F. Supp. 2d 543, *555; 2000 U.S. Dist. LEXIS 1141, **31;
10 Am. Disabilities Cas. (BNA) 302

police van lacking wheelchair restraints. See *id. at 910.* Applying the reasoning of Yeskey to the plaintiff's claims, specifically the reliance on statutory definitions, DOJ regulations and Congress's purpose to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, the Gorman Court found the Disability and Rehabilitation Acts [**32] applicable in the post-arrest transportation of arrestees. See *id. at 913.*

> 19    In *Hanson v. Sangamon County Sheriff's Dep't, 991 F. Supp. 1059 (C.D.Ill. 1998),* a case decided before Yeskey, the district court held that a deaf arrestee, who had been denied opportunities to post bond and to make a telephone call, stated a cause of action under the Disability and Rehabilitation Acts. See *id. at 1063.*

I find the reasoning of the Yeskey and Gorman Courts applicable in the context of station-house investigative questioning because it qualifies as an "activity" under the Disability and Rehabilitation Acts. First, [HN27] the statutory definition of "program or activity" in *Section 504* of the Rehabilitation Act includes "all of the operations of -- (1)(A) a department . . . of a local government." *29 U.S.C. § 794(b)*(emphasis added). Next, the ordinary and natural meaning of "activity" is a "natural or normal function or operation, [**33] " or "an organizational unit for performing a specific function." Webster's Third New International Dictionary 22 (1993); see also *Yeskey, 118 F.3d at 170; Bailey v. United States, 516 U.S. 137, 145, 133 L. Ed. 2d 472, 116 S. Ct. 501 (1995)*(stating that a word in a statute "must be given its 'ordinary or natural meaning'"). Finally, the broad scope of the DOJ regulations, extending coverage to "all services, programs, and activities provided or made available by public entities," clearly support the application of the Disability and Rehabilitation Acts to station-house investigative questioning. See *28 C.F.R. § 35.102(a)*; see also *Yeskey, 118 F.3d at 171* (citing explanatory DOJ commentary to support application "to anything a public entity does").

At the end of the day, "the [HN28] statutes must be interpreted broadly to include the ordinary operations of a public entity in order to carry out the purposes of prohibiting discrimination." *Gorman v. Bartch, 152 F.3d 907, 913 (8th Cir. 1998)*(citing *Innovative Health Sys. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir. 1997)).*

This Court expresses no [**34] hesitation in placing station-house investigative questioning, an "ordinary operation of a public entity," within the ambit of the Disability and Rehabilitation Acts.

In so holding, this Court rejects two arguments set forth by the Third-Party Plaintiffs. First, the Third-Party Plaintiffs contend that the Disability and Rehabilitation Acts are inapplicable to this case because there is no "benefit" in the police conduct at issue. As set forth above, the relevant text of the Disability Act provides:

> No qualified individual with a disability shall, by reason of such disability, **be excluded from participation in or be denied the benefits of** the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*42 U.S.C. § 12132* (emphasis added).

This Court rejects the contention of the Third Party Plaintiffs because the assistance of an allegedly unqualified interpreter during station-house investigative questioning would effectively exclude a qualified individual with a disability both from participating in and enjoying the benefits of an activity of a public entity. More concretely, the assistance [**35] of an auxiliary aid or service, which includes a qualified interpreter, would allow a hearing impaired individual to participate in the specific police activity in an appropriate [*556] manner consistent with her disability. Moreover, this auxiliary aid or service would bestow upon the qualified individual with a disability the benefit of the specific activity: to provide information to the police concerning the commission of crimes, whether in a witness or suspect capacity.

This Court also rejects the Third-Party Plaintiffs' reliance on *Rosen v. Montgomery County Maryland, 121 F.3d 154 (4th Cir. 1997).* In Rosen, a case decided before the Supreme Court's decision in Yeskey, the Fourth Circuit held that the Disability and Rehabilitation Acts did not apply in the context of an arrest. See *id. at 157-58.* Relying on the reversed district court decision in *Gorman v. Bartch, 925 F. Supp. 653, 655 (W.D.Mo. 1996)* and the now discredited reasoning that the statutory text implies voluntariness on the part of the individual, see *Yeskey, 524 U.S. at 211,* the Rosen Court held that a

Page 16

89 F. Supp. 2d 543, *556; 2000 U.S. Dist. LEXIS 1141, **35;
10 Am. Disabilities Cas. (BNA) 302

drunk driving arrest is not a "program [**36] or activity" of the defendant County. See id. at 158.

Not only is the rationale of Rosen suspect following the Supreme Court's ruling in Yeskey, but I find it clearly distinguishable from this case. Importantly, Rosen involved an in-the-field arrest, where well-established exigencies necessitate certain action for the protection of the public. While the intersection of the Disability Act, Rehabilitation Act, and the proper procedures required to effectuate an arrest is not an issue before this Court, the Rosen case provides me with the opportunity to articulate what the holding in this case is not. This decision does not require an arresting police officer to provide an auxiliary service or aid to a qualified individual with a disability while effectuating an arrest outside the confines of the police station. [20] Rather, this holding is limited to investigative questioning at the police station.

> 20   In essence, I must confine my holding to the facts of this case. Accordingly, I intimate no view regarding the issue of whether the Disability and Rehabilitation Acts apply to investigative questioning in the home of a suspect. See *Patrice v. Murphy, 43 F. Supp. 2d 1156, 1160 (W.D. Wash. 1999)*(relying on *Rosen v. Montgomery County Maryland, 121 F.3d 154, 157 (4th Cir. 1997)* to find that the Disability Act does not apply in context of an arrest).

[**37] This Court's conclusion that Calloway has a cause of action under the Disability and Rehabilitation Acts does not end my inquiry because the motion before this Court is one for summary judgment. Pursuant to *Federal Rule of Civil Procedure 56(c)*, I find, that in response to the motion for summary judgment, Calloway has submitted sufficient evidence to establish genuine issues of material fact for trial. For instance, there is evidence in the record that Powell is not a certified interpreter and had previously served as an interpreter for Calloway. See Powell Aff. at PP 3, 12. Moreover, there is evidence suggesting that individual investigators in the Police Department and Prosecutor's Office had been notified that communications with Calloway required an intermediary as well as a certified deaf interpreter. See Osborne Aff. at P 5. Therefore, genuine issues of material fact exist on whether Powell was a "qualified interpreter" for purposes of the federal statutes and whether the alleged discrimination was by reason of her disability. Accordingly, I shall deny the summary judgment motion

of the Glassboro Department of Police on Calloway's claims arising under the Disability [**38] and Rehabilitation Acts.

2.  Individual Liability Under the Disability and Rehabilitation Acts

Calloway also brings claims under the Disability and Rehabilitation Acts against Best, Massari and Powell in their individual capacities. Because I find that the individuals are not properly named as defendants, and in the alternative, are entitled to qualified immunity, I shall grant the motion for summary judgment with respect to the Disability and Rehabilitation Act claims against Best, Massari and Powell in their individual capacities.

[*557] Although the courts have only recently turned their attention to the question, the weight of judicial authority supports my conclusion that [HN29] individual defendants cannot be held liable for violations of Title II of the Disability Act and § 504 of the Rehabilitation Act. See *Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)*(en banc), cert. granted in part, *120 S. Ct. 1003, 2000 WL 63302 (2000)*; *Yeskey v. Commonwealth of Pennsylvania, 76 F. Supp. 2d 572, 575 (M.D.Pa. 1999)*; *Campos v. San Francisco State Univ., 1998 U.S. Dist. LEXIS 22615*, No. C-97-2326 MMC, 1999 WL 1201809 at *10 (N.D.Cal. June 26, 1999); [**39] *Montez v. Romer, 32 F. Supp. 2d 1235, 1240 (D.Colo. 1999)*; *Smith v. University of the State of New York, 1997 U.S. Dist. LEXIS 20782*, No. 95-CV-0477E(H), 1997 WL 800882 at *8 (W.D.N.Y Dec. 31, 1997); *Randolph v. Rodgers, 980 F. Supp. 1051, 1060 (E.D.Mo. 1997)*, vacated, rev'd, and remanded on other grounds, *170 F.3d 850 (8th Cir. 1999)*; but see *Niece v. Fitzner, 922 F. Supp. 1208 (E.D.Mich. 1996)*(individual liability permissible under Disability Act).

As the Eighth Circuit reasoned:

> [HN30] Title II provides disabled individuals redress for discrimination by a "public entity." That term, as it is defined within the statute, does not include individuals. Furthermore, while no circuit has directly addressed the issue of individual liability under Title II, there have held that there is no liability under Title I against individuals who do not otherwise qualify as "employers" under

Page 17

89 F. Supp. 2d 543, *557; 2000 U.S. Dist. LEXIS 1141, **39;
10 Am. Disabilities Cas. (BNA) 302

the statutory definition.

See *Alsbrook, 184 F.3d at 1005 n.8* (internal citations omitted). Persuaded by the reasoning of the Eighth Circuit, I find that [HN31] individual liability is not contemplated under Title II of the Disability Act [**40] and *§ 504* of the Rehabilitation Act. Accordingly, I shall grant the summary judgment motion of Best, Massari and Powell in their individual capacities with respect to the Disability and Rehabilitation Acts.

Alternatively, I find that the individuals are entitled to qualified immunity on the federal statutory claims, including *42 U.S.C. § 1983*. [HN32] It is well-established that under the doctrine of qualified immunity:

> Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." . . . The Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession. Thus, law enforcement officials who "reasonably but mistakenly" conclude that their conduct [is lawful] are entitled to immunity.

*Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997).*

At the time Best, Massari, and Powell [21] committed the allegedly [**41] discriminatory [*558] conduct, there was not a single case in the Third Circuit applying the Disability or Rehabilitation Acts in the context of investigative interviewing. In fact, the only case existing in 1997 that this Court can locate involving a substantially similar issue was decided against recognizing a cause of action under the Disability and Rehabilitation Acts. See *Gorman v. Bartch, 925 F. Supp. 653, 655 (W.D.Mo. 1996)*("It stretches the statute to talk about the Plaintiff's 'eligibility' to be arrested and taken to jail or to participate in being arrested . . ."), aff'd in part, rev'd in part, *152 F.3d 907 (8th Cir. 1998).*

21    Assuming without deciding that Powell is a

private individual acting under color of state law, I find that, like Best and Massari, she is entitled to qualified immunity. In *Richardson v. McKnight, 521 U.S. 399, 138 L. Ed. 2d 540, 117 S. Ct. 2100 (1997)*, the Supreme Court held that prison guards employed by a private prison management firm, unlike those who work directly for the government were not entitled to qualified immunity under *42 U.S.C. § 1983.* See *id. at 412.* In so holding, the Court explicitly narrowed its holding to the context in which it arose, stating that the case "does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id. at 413.* Since Powell is a private individual who was asked to participate in a single criminal investigation, an undoubtedly essential governmental activity, and also was acting under the supervision of the investigators who could not themselves perform the function, I find that Powell is qualifiedly immune. See also *Warner v. Grand County, 57 F.3d 962, 965 (10th Cir. 1995)*(finding private individual qualifiedly immune "where state 'requested' that a private citizen serve as its agent to carry out a task it was underqualified to perform itself"); *Rodriques v. Furtado, 950 F.2d 805, 815 (1st Cir. 1991)*("where a private physician agrees to assist police in search procedures which police cannot reasonably, hygenically or safely perform, the physician is entitled to no less protection than the police would be if they could reasonably perform the search").

[**42] In an effort to evade the glaring absence of any law on the subject at the time of the alleged discriminatory conduct, Calloway seems to contend that the law was "clearly established" because New Jersey statutory law requires the appointment of a qualified interpreter prior to the taking of a statement "when a hearing impaired person is arrested." See Pl.'s Br. 1 at 14; see also *N.J.S.A. § 34:1-69.10* (West 1988). [22] The inquiry before me is whether the law under the Disability and Rehabilitation Acts was clearly established as to station-house investigative interviewing on April 23, 1997, not whether the investigators knew whether they allegedly were violating a state statute. Under the circumstances of this case, I find that the law at the time

Page 18

89 F. Supp. 2d 543, *558; 2000 U.S. Dist. LEXIS 1141, **42;
10 Am. Disabilities Cas. (BNA) 302

of the allegedly discriminatory conduct was not clearly established and therefore, Best, Massari, and Powell are entitled to qualified immunity.

22    As one of her many submitted exhibits, Calloway attaches, as Exhibit K, an undated memorandum entitled "Requirements of Law Enforcement Agencies to provide CERTIFIED Interpreter for deaf and hard of hearing individuals," from "Sgt. Amico" to "Patrol Division." See Pl.'s Ex. K. In this memorandum, Sgt. Amico outlines the circumstances in which a certified interpreter is required under New Jersey law and, in the last paragraph of the memorandum, refers members of the "Patrol Division" to copies of the Disability Act. See id; see also Pl.'s Br. 2 at 4 (stating simply that this memorandum "refers department members to copies of the Americans with Disabilities Act").

Although Calloway never argues that this memorandum is significant in any way, this Court acknowledges the document's existence and views it as evidence in support of Calloway's claim that somehow, New Jersey statutory law "clearly establishes" the law under the Disability and Rehabilitation Acts.

[**43]    c. *§ 1983* Liability of the Glassboro Police Department

[HN33] To assert a claim successfully under *42 U.S.C. § 1983*, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person "acting under color of State law." *West v. Atkins, 487 U.S. 42, 48, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988).* In her Complaint, Calloway asserts a distinct claim for damages under *42 U.S.C. § 1983* for the Police Department's alleged violations of her rights under the Disability and Rehabilitation Acts.

[HN34] It is well-established that there is no general municipal respondeat superior liability under *42 U.S.C. § 1983*; rather, a municipality may be liable only when the alleged deprivation resulted from a policy, practice or custom of the governmental entity. See *McMillian v. Monroe County Alabama, 520 U.S. 781, 784, 138 L. Ed. 2d 1, 117 S. Ct. 1734 (1997); Monell v. Department of Soc. Serv. of the City of New York, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).* Interpreting [**44]

this standard, the Third Circuit has held that:

[HN35] Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent [*559] and well settled' as to virtually constitute law.

*Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.),* cert. denied, *519 U.S. 1151, 137 L. Ed. 2d 219, 117 S. Ct. 1086 (1997)*(quoting *Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).*

In this case, Calloway has failed to allege any facts that would implicate the Glassboro Police Department. Calloway does not contend that the discrimination she suffered was the result of a police custom or policy, nor does she submit that such a policy exists. In light of the absence of any genuine issue of material fact regarding the liability of the Glassboro Police Department, summary judgment is appropriate on Calloway's *§ 1983* claim.

4. Relief for Mental Anguish Under the Federal Statutes

In Count [**45] V of her Complaint, Calloway alleges that she has suffered "great mental and physical anguish, requiring therapeutic counseling" entitling her to monetary damages. See Complaint, Count V (filed Jule 2, 1998). In support of their motion for summary judgment, the Third-Party Plaintiffs contend that Calloway "has failed to provide any evidence in support of her claim" and therefore, there is an absence of a genuine issue of material fact for trial. In response, Calloway submits the deposition testimony of Wendy Heines, Calloway's treating therapist, for the proposition that "all of the events stem from [Calloway's] vulnerability to disempowerment as a disabled person . . ." Pl.'s Br. in Opp. to Mot. for Summ. J. by Def's Police Department, Massari and Powell ("Pl.'s Br. 2") at 13.

I need not decide the question of whether "mental anguish" damages are recoverable under the Disability and Rehabilitation Acts since Calloway has failed to come forward with sufficient evidence to create a genuine

Page 19

89 F. Supp. 2d 543, *559; 2000 U.S. Dist. LEXIS 1141, **45;
10 Am. Disabilities Cas. (BNA) 302

issue of material fact that she has suffered such damages. See e.g., *Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108, 1121 (3d Cir. 1988)*(finding that, in a § 1981 and Title [**46] VII case, plaintiff must present actual evidence of mental distress, it will not be inferred). Specifically, neither Heines's deposition testimony nor any other exhibit submitted by Calloway supports a claim for damages for mental anguish. Calloway claims that the relevant deposition testimony includes the following:

Q: (presumably by Calloway's attorney): Concerning the arrest, was it the fact that she had been arrested that made her angry or was it the fact that somebody had, in her mind, falsely accused her of molesting a child?

. . .

A: (by Deponent Heines): . . . the thing with the arrest ties into -let me paint a picture of a woman who her whole life is at the mercy of hearing people to do things for her and she has very little say in outcomes.

When you put it in that framework, was she indignant about being arrested and was she indignant that the interpreter was not qualified or skilled that she didn't quite understand the interpreter? That's her everyday life. That's every day in her life is not being able to understand what's going on around her. **The outcome of that particular not being able to understand what's going on around her was certainly more traumatic [**47] than it is on every other day of her life.** That doesn't make it less, that doesn't mitigate it, but the reason why it would strike Cora, why she would be so **angry** is that she had so few friendships. She had them in high school and she desperately wanted them. She was lonely; very, very lonely. And these people that she thought of as her friends instead exploited her and she was **hurt** by that.

Pl.'s Ex. L (Heines Dep.) at 92-93 (emphasis added).

It is clear that Heines's deposition testimony, taken

as a whole, does not shed any light on whether Calloway has suffered mental or physical anguish from the events at issue. The testimony, painting a picture [*560] of a lonely deaf woman frustrated by the hearing world, does not indicate that she was "traumatized" by her inability to understand the interpreter; rather, the therapist's testimony states that this "trauma" involved immediate "anger" and "hurt." I find that merely experiencing anger and hurt, as a suspect of a criminal assault investigation, is insufficient to raise a genuine issue of material fact with respect to mental anguish and suffering.

## 2. *Calloway's State Law Causes of Action*

In her Complaint, [**48] Calloway asserts a myriad of state law claims including: (1) a violation of her rights to a qualified interpreter under *N.J.S.A. § 34:1-69.10* (Count I); (2) false imprisonment (Count VI); and (3) negligence against Powell (Count VII). The Third-Party Plaintiffs [23] move for summary judgment on all of these Counts of the Complaint, which I shall address in turn.

> 23 Pursuant to the May 29, 1998 Order of the Honorable John Holston, Judge of the Superior Court of New Jersey, the mental anguish (Count V) and state law claims (Counts I and VI) against Defendant Best have been dismissed. See Third-Party Def.'s Ex. I (Order) at 1.

### 1. The Applicability of *N.J.S.A. 34:1-69.8*

Recognizing that "hearing impaired persons . . . cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them," the New Jersey Legislature enacted a statute which provides for such assistance in a variety of legal settings. See *N.J.S.A. §§ 34:1-69.7*, 1-69.10. Relevant to this case, section [**49] *34:1-69.10* provides, in pertinent part:

> [HN36] The appointing authority shall appoint a qualified interpreter to assist a hearing impaired person throughout the proceedings and in preparation with counsel as follows . . .
>
> > (1) When a hearing impaired person is arrested for an alleged violation of criminal law, a qualified interpreter shall be appointed prior to a reading

Page 20

89 F. Supp. 2d 543, *560; 2000 U.S. Dist. LEXIS 1141, **49;
10 Am. Disabilities Cas. (BNA) 302

of Miranda warnings, interrogating or taking a statement from the hearing impaired person.

(2) Any statement, written or oral, made by a hearing impaired person in reply to a question from a law enforcement officer or any other person having a prosecutorial function in any criminal or quasi-criminal proceeding shall not be used against that hearing impaired person unless either the statement was made or elicited through a qualified interpreter and was made knowingly, voluntarily and intelligently, or the hearing impaired person has requested a waiver . . . and the court makes a finding that any statement made by the hearing impaired person was made knowingly, voluntarily and intelligently.

*N.J.S.A. 34:1-69:10(c)(1)-(2).* [24] The Third-Party Plaintiffs contend that even if there was a violation [**50] of the statute in this case, Calloway has no remedy since the statute does not permit monetary relief. See Third Party Pl.'s Br. at 4.

24 The statutory definitions of the relevant terms are contained in *section 34:1-69.8,* which provides, in pertinent part:

As used in this act:

"Appointing authority" means the . . . director or commissioner of any department or agency, or any other person presiding at any hearing or other proceeding in

which a qualified interpreter is required pursuant to this act. . .

"Hearing impaired person" means a person whose hearing is impaired so as to prohibit the person from understanding oral communication. The term further includes a person who, because of loss of hearing, cannot communicate spoken language. . .

"Qualified interpreter" means an interpreter certified by the National Registry of Interpreters for the Deaf, Inc. and listed by the State Division of the Deaf in the Department of Labor or the New Jersey Registry of Interpreters for the Deaf.

Id. at 34:1-69.8(a)-(b), (d).

[**51] In her brief, Calloway failed both to address the statutory contention of the Third-Party Plaintiffs and to offer any argument in support of the viability of a [*561] separate cause of action under the statute. See Pl.'s Br. 2 at 6-7 (describing substantive terms of *N.J.S.A. 34:1-69.10* within context of ADA claim). Acknowledging that my own review of New Jersey judicial authority on the statute has proved futile, [25] I interpret Calloway's silence as a concession that the statute does not permit a private cause of action for damages. Accordingly, I shall grant the summary judgment motion of the Police Department, Massari, and Powell on Count 1 of the Complaint.

25 In my review of the case law, I located only two cases mentioning the New Jersey statutory provisions relating to the Division of the Deaf. First, in *Accident Index Bureau, Inc. v. Hughes, 46 N.J. 160, 215 A.2d 529 (1965),* the Supreme Court of New Jersey referred to the creation of the Division of the Deaf. See *id. at 169.* Finally, in *State v. P.E., 284 N.J. Super. 309, 664 A.2d 1301 (Law Div. 1994),* the lower court, by way of example, stated that, under *section 34:1-69.10,* a deaf defendant would be provided with an interpreter in court. See *284 N.J. Super. at 316.*

[**52] Moreover, I find that summary judgment on

Page 21

89 F. Supp. 2d 543, *561; 2000 U.S. Dist. LEXIS 1141, **52;
10 Am. Disabilities Cas. (BNA) 302

Count I is "appropriate." See *Fed. R. Civ. P. 56(e)*("if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party"). The explicit statutory language provides that a statement obtained from a hearing impaired person who has not been provided with a qualified interpreter or who has not effectively waived that assistance shall not be used against the hearing impaired person. See *N.J.S.A. 34:1-69:10* (West 1988). Considering that the exclusion of the statement is the sole remedy provided in the statute, [HN37] it is clear that the purpose of *section 34:1-69:10* is to ensure that incriminating statements made without the appropriate assistance be suppressed. Indeed, the pertinent legislative findings do not conflict with this finding. [26] Without commenting on the merits of such claims, this Court recognizes that Calloway has not chosen to assert her claims under the New Jersey Constitution or the New Jersey Law Against Discrimination, two vehicles that have historically provided relief to plaintiffs alleging violations of due process and discrimination, respectively. Instead, Calloway has [**53] chosen to pursue a procedural mechanism without any apparent remedy (as Calloway does not allege that any statements were in fact used against her). I do not find it necessary or appropriate to imply a private cause of action for damages under *N.J.S.A. § 34:1-69.10*. Accordingly, I shall grant the motion for summary judgment on Count I of the Complaint.

26 *Section 34:1-69.7* provides:

> The Legislature finds and declares that it shall be the policy of this State to secure the rights of hearing impaired persons who, because of impairment of hearing or speech, are unable to readily understand or communicate spoken language and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.

Id.

## 2. Calloway was Not Falsely Imprisoned

The Third-Party Plaintiffs contend that the existence of probable cause precludes all liability for false imprisonment. See Third-Party Pl.'s Br. at 5-6. As with her claim under *N.J.S.A. 34:1-69:10*, [**54] Calloway does not respond to the false imprisonment issue and, therefore, this Court shall grant summary judgment.

Alternatively, I find that the Third-Party Defendants are entitled to summary judgment on the merits. [HN38] Probable cause, an absolute defense to a claim of false imprisonment, "exists if at the time of arrest 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Wildoner v. Borough of Ramsey, 158 N.J. 75, 2000 WL 101219 at *9, 726 A.2d 938 (N.J. 2000).*

It is clear from the facts of this case that probable cause existed for the investigators to arrest Calloway. At the time of [*562] the arrest, the investigators had in their possession two signed criminal complaints against Calloway and had conducted interviews with both the complainant and the victim. See Third-Party Def.'s Ex. D at 1-2; see also id., Ex. G at 1 (explaining that Best knew of signed complaints and reviewed the audio tape of the victim's interview prior to interviewing Calloway). [**55] Furthermore, according to Best's case report, the investigators had established a relationship between Calloway and the victim. See Third-Party Def.'s Ex. G at 2 (stating that Calloway told Best that she was never the victim's paid or permanent babysitter but that the victim often came to Calloway's house to play, Calloway had bathed her, and that the victim sometimes spent the night). Accordingly, I find probable cause existed and that summary judgment on Count VI is warranted.

## 3. There is No Evidence that Calloway was Injured by Powell's Alleged Negligence

Powell disputes the validity of Calloway's Count VII negligence claim, arguing that there are no genuine issues of material fact on any prong of the negligence standard, in either duty, breach, proximate cause or damages. See Third-Party Pl.'s Br. at 6-9. In opposition to the motion for summary judgment, Calloway contends that Powell owed a duty to exercise the care of a professional interpreter and that the issue of breach must be left to the jury. See Pl.'s Br. 2 at 10.

I need not reach the standard of care because there is no evidence in the record that Calloway suffered any

Page 22

89 F. Supp. 2d 543, *562; 2000 U.S. Dist. LEXIS 1141, **55;
10 Am. Disabilities Cas. (BNA) 302

injury as a result of Powell's [**56] alleged negligence. Moreover, in her brief, Calloway does not articulate any actual harm that she experienced as a result of her allegedly strained communication with Powell.

As set forth above, the investigators had probable cause to arrest Calloway, thereby foreclosing any hypothetical allegations of harm stemming from the arrest. Furthermore, Calloway's failure to produce any evidence that she suffered mental or physical anguish bars any claim for emotional or psychological injury suffered as a result of Powell's alleged negligence. This Court finds that Calloway's only supportable injuries are linked to the claims of discrimination. For these reasons, I shall grant Powell's motion for summary judgment on Count VII of the Complaint.

I shall now turn to the second motion for summary judgment before this Court filed by the Third-Party Defendants, Best, Andy Yurick, Esq., and the Gloucester County Prosecutor's Office, against the Third-Party Plaintiffs, Massari, Powell, and the Glassboro Police Department.

2. Summary Judgment Motion of Third-Party Defendants, Best, Andy Yurick, Esq. and Gloucester County Prosecutor's Office

In their six-count third-party complaint, the Third-Party [**57] Plaintiffs allege that they relied on the negligently given advice of Gloucester Prosecutor's Office Investigator Best that Melaney Powell was lawfully permitted to translate for hearing impaired persons in their contact with the police. See Third-Party Complaint at Counts I-V. The Third-Party Complaint raises claims of negligence and vicarious liability.

In support of their motion for summary judgment, the Third-Party Defendants allege that Best is immune from liability under the New Jersey Tort Claims Act as he was acting in good faith in the execution or enforcement of a law. See Third-Party Def.'s Br. at 9-12. Additionally, the Third-Party Defendants perplexedly seem to assert a host of arguments that they, not the original defendants, are not liable under the claims asserted by Calloway in her Complaint. As a specific example, the Third-Party Defendants contend that Andy Yurick, Esq. and the Gloucester County Prosecutor's Office cannot be liable under *42 U.S.C. § 1983* because Calloway failed to allege a "policy or custom" violative of Calloway's constitutional rights. See Third-Party Def.'s Br. at 12-13.

[*563] This confused motion was never corrected [**58] in, for example, a reply brief since the Third-Party Plaintiffs did not oppose the motion for summary judgment. According to the Federal Rules of Civil Procedure, if the non-moving party fails to respond, "summary judgment, if appropriate, shall be entered against the adverse party." *Fed. R. Civ. P. 56(e)*. In this case, I shall not enter summary judgment because it is far from "appropriate."

In this case, the moving parties failed to meet even their initial burden in properly contending the absence of a genuine issue of material fact. For instance, the Third-Party Defendants' discussion of Third-Party Defendant Best's immunity argues that he "acted in objectively reasonable good faith when he attempted to interview [Calloway]," see Third-Party Def.'s Br. at 11, when in fact the third-party claims against him deal with his negligent advice pertaining to interpreter Melaney Powell. Additionally, as mentioned above, in the brief it is argued that Yurick and the Prosecutor's Office cannot be held liable under *42 U.S.C. § 1983* when in fact no such claims were raised against them. See *id. at 12*. While it is a fundamental legal tenet that third-party liability [**59] is derivative and, as a defense, third-party defendants may argue that third-party plaintiffs are not liable against the original plaintiff, in this case, the Third-Party Defendants clearly have failed to do so. Accordingly, I shall deny the summary judgment motion of the Third-Party Defendants, Best, Yurick, and the Prosecutor's Office, for failing to meet their initial burden.

## IV. CONCLUSION

For the reasons set forth above, I shall grant in part and deny in part the summary judgment motion of Defendant Best and the Third-Party Plaintiffs pursuant to *Federal Rule of Civil Procedure 56(c)*. Furthermore, I shall deny the Third-Party

Defendants' motion for summary judgment. The Court shall enter an appropriate Order.

Dated: February 8, 2000

STEPHEN M. ORLOFSKY

United States District Judge

ORDER

Page 23

89 F. Supp. 2d 543, *563; 2000 U.S. Dist. LEXIS 1141, **59;
10 Am. Disabilities Cas. (BNA) 302

This matter having come before the Court on the motions of Defendants, the Borough of Glassboro Department of Police ("Police Department"), Ronald Massari ("Massari"), and Melaney Powell ("Powell"), and on the separate motion of Defendant Robert Best ("Best") and Third-Party Defendants Best, Andy Yurick, Esq. and the Gloucester County Prosecutor's Office ("Prosecutor's [**60] Office"), for summary judgment pursuant to *Federal Rule of Civil Procedure 56(c)*, Allan E. Richardson, Esq., appearing on behalf of Defendants Police Department, Massari, and Powell, and Robert M. Kaplan, Esq. of Margolis Edelstein, appearing on behalf of Defendant and Third-Party Defendant Best, and Third-Party Defendants Any Yurick, Esq. and the Prosecutor's Office, and James M. Shepard-Kegl, Esq., appearing on behalf of Plaintiff, Cora Calloway; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 8th day of February, 2000, hereby ORDERED that:

1. The motion of Defendants Police Department, Massari and Powell for summary judgment is GRANTED in part and DENIED in part;

2. The motion of the Police Department for summary judgment on Counts II and III of the Complaint, containing claims pursuant to the Americans With Disabilities Act and Rehabilitation Act, is DENIED only with respect to the Police Department;

3. The motion of the Police Department for summary judgment on Counts I, IV, V, and VI is GRANTED;

4. The motion of Massari and Powell for summary judgment [**61] on all Counts of the Complaint is GRANTED;

5. The motion of Defendant Best and Third-Party Defendant Best, Andy Yurick, Esq. and the Prosecutor's Office [*564] is GRANTED in part and DENIED in part;

6. The motion of Defendant Best for summary judgment on the federal claims, including claims under the Americans with Disabilities Act (Count II), the Rehabilitation Act (Count III), and *42 U.S.C. § 1983* (Count IV), is GRANTED in its entirety;

7. The motion of Third-Party Defendants Best, Andy Yurick, Esq. and the Prosecutor's Office is DENIED in its entirety.

STEPHEN M. ORLOFSKY

United States District Judge